IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CARLOS GONZALEZ MORALES and HILDA RODRIGUEZ FORTEZA,<br><br>                     Plaintiffs,<br>v.<br><br>UBS BANK USA,<br><br>                     Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:14-cv-888-JNP-BCW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Brooke C. Wells |

Before the court is Defendant UBS Bank USA's ("UBS Bank") Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket 63). On May 24, 2016, the court held a hearing on UBS Bank's motion. The court then took the motion under advisement. After careful consideration of the record, the relevant law, and the parties' memoranda, the court GRANTS IN PART and DENIES IN PART UBS Bank's Motion to Dismiss.

## BACKGROUND

Plaintiffs Carlos Gonzalez Morales and Hilda Rodriguez Forteza are a married couple residing in Puerto Rico. Both are real estate developers. Defendant UBS Bank is a federally regulated bank incorporated and headquartered in Utah, and is a wholly-owned subsidiary of UBS Americas, Inc. ("UBS Americas"). UBS Financial Services, Inc. ("UBS Financial Services") and UBS Financial Services Incorporated of Puerto Rico ("UBS Puerto Rico") are also wholly-owned subsidiaries of UBS Americas that provide securities brokerage services. UBS Financial Services and UBS Puerto Rico are corporate affiliates of UBS Bank.[1]

Plaintiffs allege that they relied on Jose Ramirez, a UBS Puerto Rico financial advisor and an authorized agent of UBS Bank, and other UBS Puerto Rico investment experts in order to

---
[1] UBS Americas, UBS Financial Services, and UBS Puerto Rico are not parties to this action.

obtain loans from UBS Bank. Plaintiffs allege that Mr. Ramirez represented to them that (1) loans from UBS Bank would be available to Plaintiffs on the condition that the loan proceeds be used to purchase closed-end mutual fund ("CEF") shares from UBS Puerto Rico; (2) the annual interest rate on the loans would be only 1%; (3) Mr. Ramirez would handle all aspects of the loan transactions, including preparation of documentation on UBS Bank forms; and (4) Mr. Ramirez would act as a liaison with UBS Bank and handle all aspects of the loans prior to and after authorization and disbursement of the loans.

Between September 20, 2011 and June 30, 2012, UBS Bank made five separate loans to Plaintiffs, totaling nearly $5 million. According to Plaintiffs, each of these loans were subject to UBS Bank's condition that Plaintiffs use the loan proceeds to acquire CEF shares from UBS Puerto Rico. Plaintiffs allege that after they received the loan proceeds from UBS Bank, they then wrote a check to UBS Puerto Rico that was for substantially the same amount as the loan proceeds. As collateral for the loans, UBS Bank took a security interest in Plaintiffs' UBS Puerto Rico brokerage account, which consisted almost entirely of CEF shares.

Plaintiffs allege that they asked Mr. Ramirez whether UBS Bank had approved the loan program. According to Plaintiffs, Mr. Ramirez replied that "the Bank had authorized the loan program to be implemented and managed through [UBS] Bank's affiliate, [UBS Puerto Rico]." Because of this, Plaintiffs allege that UBS Bank "did in fact knowingly grant loans to Plaintiffs conditioned on the purchase of [CEF] shares." Plaintiffs further allege that they relied on Mr. Ramirez's representations that UBS Bank had given all necessary approval for loans conditioned on the purchase of CEF shares.

Plaintiffs allege that their only documents relating to a credit line with UBS Bank are the Credit Line Agreements executed by Mr. Morales on August 4, 2010 and executed by Ms.

2

Forteza on November 11, 2009.[2] In paragraph C of the Credit Line Agreements, the parties agreed that "**UNLESS DISCLOSED IN WRITING TO UBS BANK USA AT THE TIME OF THIS AGREEMENT, AND APPROVED BY UBS BANK USA, THE BORROWER AGREES NOT TO USE THE PROCEEDS OF ANY ADVANCE EITHER TO PURCHASE, CARRY OR TRADE IN SECURITIES.**" The parties further agreed in paragraph D that

> THE BORROWER UNDERSTANDS THAT BORROWING USING SECURITIES AS COLLATERAL ENTAILS RISKS. SHOULD THE VALUE OF THE SECURITIES IN THE COLLATERAL ACCOUNT DECLINE BELOW THE REQUIRED COLLATERAL MAINTENANCE REQUIREMENTS, UBS BANK USA MAY REQUIRE THAT THE BORROWER POST ADDITIONAL COLLATERAL, REPAY PART OR ALL OF THE BORROWER'S LOAN AND/OR SELL THE BORROWER'S SECURITIES. ANY REQUIRED LIQUIDATIONS MAY INTERRUPT THE BORROWER'S LONG-TERM INVESTMENT STRATEGIES . . . .

And in paragraph K, the parties agreed that "UBS Bank USA and its affiliates will act as creditors and, accordingly, their interests may be inconsistent with, and potentially adverse to, the Borrower's interests."

In 2013, the value of the CEFs collapsed. Subsequently, in March 2013, UBS Bank foreclosed on Plaintiffs' account, liquidated some of Plaintiffs' CEF shares, and applied the proceeds to reduce the balance on Plaintiffs' loans. Plaintiffs allege that UBS Bank has taken ownership of all of Plaintiffs' CEF shares to pay down the loans, thereby "wiping out" Plaintiffs' investment and leaving Plaintiffs with a loan balance of nearly $1 million.

Plaintiffs originally filed a complaint against UBS Bank in the court of the Commonwealth of Puerto Rico. UBS Bank removed the case to the U.S. District Court for the District of Puerto Rico. The District of Puerto Rico then granted UBS Bank's motion to transfer

---

[2] Although the Credit Line Agreements are two separate documents, they are the same in all material aspects.

the case to the District of Utah based on the forum selection clause in the Credit Line Agreements.

Following the transfer, Plaintiffs amended their complaint, alleging four different causes of action against UBS Bank: (1) violation of the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972; (2) illegal contract; (3) conversion; and (4) breach of fiduciary duty (Docket 59). UBS Bank subsequently filed its motion to dismiss (Docket 63).

## LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must allege "enough factual matter, taken as true, to make his 'claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). However, the court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

UBS Bank's motion to dismiss asserts arguments against each of Plaintiffs' claims. Each of Plaintiffs' claims and UBS Bank's corresponding arguments for dismissal are addressed below.[3]

### I. Plaintiffs' BHCA Claim

Plaintiffs allege that UBS Bank violated the anti-tying provision of the BHCA by

---

[3] The Credit Line Agreements contain a choice of law provision dictating that the agreements are to "**BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF UTAH**." Thus, the court will apply Utah law to UBS Bank's state law arguments.

4

conditioning Plaintiffs' receipt of the loans on Plaintiffs' agreement to use the loan proceeds to purchase CEF shares. The anti-tying provision of the BHCA states, in part, that

> A bank shall not in any manner extend credit . . . or furnish any service . . . on the condition or requirement . . . that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service . . . .

12 U.S.C. § 1972(1)(A). A person injured by a tying arrangement prohibited by § 1972 may sue for damages and is "entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee." 12 U.S.C. § 1975.

To show a violation of § 1972, Plaintiffs must prove (1) "the bank imposed an anticompetitive tying arrangement, that is, it conditioned the extension of credit upon the borrower's obtaining or offering additional credit, property, or services to or from the bank;" (2) "the arrangement was not usual or traditional in the banking industry;" and (3) "the practice conferred a benefit on the bank." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 565 (6th Cir. 2003); *Quintana v. First Nat'l Bank of Santa Fe*, 125 F.3d 862 (10th Cir. 1997) (unpublished table decision) (citing *Parsons Steel, Inc. v. First Ala. Bank*, 679 F.2d 242, 245–46 (11th Cir. 1982); *Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363, 368 (10th Cir. 1990)).

UBS Bank advances four arguments in support of its claim that Plaintiffs have failed to satisfy the pleading requirements for the first element, an anticompetitive tying condition: (A) evidence of a tying condition is barred by the parol evidence rule; (B) the existence of a tying condition is implausible because it is contrary to the parties' contractual agreements and description of the transaction; (C) Plaintiffs fail to allege coercion; and (D) Plaintiffs lack standing. Each of these arguments is addressed below.

### A. Parol Evidence Rule

UBS Bank first argues that Plaintiffs' BHCA claim should be dismissed because

5

Plaintiffs' allegations of an illegal tying condition are barred by the parol evidence rule. Plaintiffs' complaint alleges that Mr. Ramirez imposed this condition on them orally—the condition does not appear in the Credit Line Agreements. Because both of the Credit Line Agreements contain integration clauses, UBS Bank contends that evidence of the illegal tying condition is barred by the parol evidence rule.

UBS Bank's parol evidence arguments are misplaced. Under Utah law, the parol evidence rule is "a principle of contract interpretation." *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330 (Utah 2008) (quoting *Hall v. Process Instruments & Control*, 890 P.2d 1024, 1026 (Utah 1995)). It is not a generally applicable rule of evidence. 11 WILLISTON ON CONTRACTS § 33:3 (4th ed. 2015). Instead, it exists to prevent a court from relying on extra-contractual evidence when interpreting a contract. *See Tangren*, 182 P.3d at 330.

But this case does not involve interpretation of the Credit Line Agreements. Rather, Plaintiffs' BHCA claim is for a statutory violation, a cause of action that depends on the parties' conduct surrounding their transaction, not on the meaning of the Credit Line Agreements. Just because the parties had a contract stating they agreed not to violate a statute does not mean the parties are precluded from introducing evidence showing that a violation occurred. To hold otherwise would allow banks to avoid liability for violations of the BHCA so long as their customer agreements state that the parties will adhere to applicable law. The parol evidence rule is simply not applicable in such a context.

### B.     Implausibility of Plaintiffs' BHCA Allegations

UBS Bank next argues that Plaintiffs' BHCA claim must be dismissed because Plaintiffs' allegations of an illegal tying condition "are wholly conclusory, containing no detail whatsoever." UBS Bank identifies two lines from Plaintiffs' complaint to illustrate the

conclusory nature of Plaintiffs' pleadings: "[UBS] Bank did in fact knowingly grant loans to Plaintiffs conditioned on the purchase of shares in the Funds," and an allegation that UBS Bank "represented . . . [that] loans would be available to Plaintiffs on the condition that loan proceeds be used to purchase shares in the Funds."

UBS Bank further asserts that Plaintiffs' allegations contradict the existence of an unlawful tying condition. For example, UBS Bank argues that Plaintiffs' allegations are contrary to what Plaintiffs agreed to in paragraph C of the Credit Line Agreements. Paragraph C states, "**UNLESS DISCLOSED IN WRITING TO UBS BANK USA AT THE TIME OF THIS AGREEMENT, AND APPROVED BY UBS BANK USA, THE BORROWER AGREES NOT TO USE THE PROCEEDS OF ANY ADVANCE EITHER TO PURCHASE, CARRY OR TRADE IN SECURITIES.**" Similarly, UBS Bank argues that Plaintiffs' allegations are contrary to their statements on Federal Reserve Form U-1 that states, "[N]o portion of the UBS Credit Line proceeds will be used to purchase, trade or carry securities." Thus, UBS Bank argues that the parties' statements in these documents preclude the existence of an unlawful tying condition.

UBS Bank also contends that Plaintiffs' claim is contradictory because "Plaintiffs claim that the proceeds of the Loans were in their full possession and control before they ever allegedly purchased securities," and that Plaintiffs "received the credit they sought without fulfilling any supposed oral 'condition.'" Thus, UBS Bank argues that "even under [Plaintiffs'] own allegations, they received the credit they sought without fulfilling any supposed oral 'condition.'" (emphasis omitted).

Under the first element of a BHCA claim, "a claimant must prove that the purchase of the tied product or service was a mandatory condition or requirement of obtaining a loan from the

7

lender." *Highland Capital*, 350 F.3d at 567. Such an illegal tying condition "is established by proof that a bank conveyed an intention to withhold credit unless the borrower fulfilled a 'prerequisite' of purchasing or furnishing some other product or service." *Id.*

Here, Plaintiffs have pleaded sufficient allegations showing an illegal tying condition. In addition to the two lines identified by UBS Bank, Plaintiffs also allege facts concerning UBS Bank's scheme in which "clients were 'piled into highly leveraged bond funds run by UBS and were encouraged by its brokers to borrow even more money to invest in those funds.'" Plaintiffs further allege facts concerning news reports and investigations of other UBS brokers "who [the Office of the Commissioner of Financial Institutions of Puerto Rico] found may have directed their clients to improperly borrow money in order to buy the Funds."

Plaintiffs couple these allegations of an illegal tying scheme with allegations that Mr. Ramirez, acting in a dual role as a financial advisor for UBS Puerto Rico and an authorized agent of UBS Bank, represented that UBS Bank loans "would be available to Plaintiffs on the condition that loan proceeds be used to purchase shares in the Funds from [UBS Puerto Rico]." Plaintiffs also allege that Mr. Ramirez told them that UBS Bank "had authorized the loan program to be implemented and managed through [UBS] Bank's affiliate, [UBS Puerto Rico]."

In addition, Plaintiffs allege that each of the loans UBS Bank made to them were "subject to the Bank's condition that Plaintiffs use the loan proceeds to acquire shares in the Funds from [UBS Puerto Rico]." Plaintiffs further contend that "[c]ontemporaneous with the deposit of loan proceeds in Plaintiffs' account, Plaintiffs wrote a check to [UBS Puerto Rico] from that account in substantially the same amount as the amount of the loan proceeds, again in compliance with the condition that they purchase shares in the Funds from the affiliate[, UBS Puerto Rico]."

Although Plaintiffs' allegations may be inconsistent with the Credit Line Agreements and

Federal Reserve Form U-1, the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe*, 633 F.3d at 1025. The fact that the parties had a contract stating they agreed not to violate a statute does not mean the parties are precluded from alleging a violation of that statute. Although such allegations may appear contradictory, they nonetheless survive a Rule 12(b)(6) motion to dismiss.

Assuming Plaintiffs' allegations are true, Plaintiffs have alleged sufficient facts showing "that the purchase of the tied product or service was a mandatory condition or requirement of obtaining a loan from the lender." *Highland Capital*, 350 F.3d at 567; *see also id.* at 566 ("The plaintiff could satisfy the first element required of a claim under Section 1972 merely by showing that the Bank demanded that [Plaintiff] obtain other property (the bank holding company stock) or furnish other property (the payment for the stock) as a condition or requirement of obtaining the . . . loan."). Accordingly, Plaintiffs have "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

    **C.**    **Coercion as an Element of a BHCA Claim**

UBS Bank next argues that Plaintiffs' BHCA claim should be dismissed because Plaintiffs fail to plead they were coerced into accepting the alleged tying condition. UBS Bank relies on a proposed interpretation of the BHCA issued by the Federal Reserve System, which states that "a violation of [the BHCA] may occur only if the condition or requirement was imposed or forced on the customer by the bank." Anti-tying Restrictions of Section 106 of the Bank Holding Company Act Amendments of 1970, 68 Fed. Reg. 52,024, 52,029 (proposed Aug. 29, 2003).

But the interpretation proposed by the Federal Reserve has not been adopted by the courts. Indeed, since the proposed interpretation was issued, no circuit court has held that a

BHCA claim requires proof of coercion. *See Akiki v. Bank of Am., N.A.*, 632 F. App'x 965, 968–70 (11th Cir. 2015);[4] *Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898, 903–904 (8th Cir. 2008); *K3C Inc. v. Bank of America, N.A.*, 204 F. App'x 455, 465–66 (5th Cir. 2006); *Highland Capital*, 350 F.3d at 567. As the Sixth Circuit explained, "emphasizing the notion of 'coercion' creates a requirement that is not contained in the statute. Section 1972 does not require proof of 'force or coercion' . . . . The terms employed in the statute are 'condition or requirement.'" *Highland Capital*, 350 F.3d at 567. After giving the terms "condition" and "requirement" "their ordinary meanings as used in [the BHCA]," the Sixth Circuit concluded "proof of a statutory violation will be made out by evidence that taking or furnishing another service or product is a condition that must be fulfilled before the bank will agree to extend credit." *Id.* Evidence of "force or involuntary submission" is unnecessary to establish a BHCA claim. *Id.*

This court agrees with the Sixth Circuit's analysis. Accordingly, because the BHCA does not require proof of force or coercion, Plaintiffs were not required to allege that they were forced or coerced into purchasing the CEF shares in order to plead a BHCA claim.

D.   **Standing Under the BHCA**

Finally, UBS Bank argues that Plaintiffs lack standing to bring their BHCA claim because Plaintiffs fail to allege any injury directly caused by the alleged tying condition. Under the BHCA, "Any person who is injured in his business or property by reason of anything

---

[4] UBS Bank argues that the Eleventh Circuit has held that BHCA claims require proof of coercion and points to *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143 (11th Cir. 1993) for the proposition that "BHCA and [Home Owners' Loan Act ("HOLA")] anti-tying claims require plaintiff to show it was 'forced or coerced' into purchasing [a] tied product." Yet the Eleventh Circuit in *Integon* interpreted the HOLA, not the BHCA. Although the HOLA language interpreted by the *Integon* court is identical to the BHCA, the Eleventh Circuit did not require evidence of force or coercion in the BHCA context in a subsequent case, *Akiki v. Bank of America, N.A.*, 632 F. App'x 965 (11th Cir. 2015).

In *Akiki*, the Eleventh Circuit held that Plaintiffs failed to state a BHCA claim when they pled they were *forced* to participate in an illegal tying arrangement instead of pleading that their loan was *conditioned* on their participation. *Id.* at 969. Nothing in the *Akiki* court's holding indicated that allegations of both a condition and coercion are required to state a BHCA claim. *See id.*

forbidden in section 1972 of this title may sue therefor . . . ." 12 U.S.C. § 1975.

UBS Bank asserts that the standing analysis for BHCA claims "involves the 'same analysis' used to determine antitrust standing." UBS Bank contends that standing in the antitrust context requires injuries that are "direct and concrete." Thus, UBS Bank argues that Plaintiffs' BHCA claim should be dismissed because all of Plaintiffs' allegations regarding their injuries are "indirect and speculative."

In support of its arguments, UBS Bank cites *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440 (5th Cir. 1986) for the proposition that "antitrust statutes and decisions [are] 'most pertinent'" when evaluating standing under BHCA." Yet *Campbell* explicitly addresses the question of whether *non-customers* to a bank have standing under § 1975. *Id.* at 442. The *Campbell* court noted that the only published cases to address standing under the BHCA involved *customers* to a bank. *Id.* For this reason, *Campbell* relied on an antitrust standing analysis when it held that non-customers to a bank only have standing under § 1975 if their injuries are "a direct consequence of the defendant's activities." *Id.* at 443.

In contrast to *Campbell*'s non-customer rule, a customer of a bank has standing to sue for BHCA violations. *Amerifirst Props., Inc. v. FDIC*, 880 F.2d 821, 825 (5th Cir. 1989); *see also Campbell*, 781 F.2d at 442 ("[P]laintiffs who deal directly with a bank possess standing to sue for violations of § 1972."); *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 60 (5th Cir. 1978). Because Plaintiffs obtained loans from UBS Bank, they are customers of UBS Bank. *See, e.g.*, *Amerifirst Props.*, 880 F.2d at 825; *Swerdloff*, 584 F.2d at 60. As such, Plaintiffs have standing to sue UBS Bank under the BHCA.[5]

In sum, UBS Bank's arguments concerning Plaintiffs' BHCA claim fail. Accordingly,

---

[5] While the Tenth Circuit has not explicitly addressed who has standing to sue under the BHCA, UBS Bank does not challenge the reasoning or validity of the Fifth Circuit's customer/non-customer approach. Accordingly, this court adopts that approach for purposes of determining standing under the BHCA.

Plaintiffs' BHCA claim survives UBS Bank's motion to dismiss.

## II.     Plaintiffs' Illegal Contract Claim

Plaintiffs bring an illegal contract claim, alleging that UBS Bank induced Plaintiffs to enter into loan transactions that violated the anti-tying provision of the BHCA. Because the loan transactions violated the BHCA, Plaintiffs contend that the Credit Line Agreements they entered into with UBS Bank are "null and void" as against public policy.

Conversely, UBS Bank argues that, in general, loan agreements remain enforceable despite a violation of the BHCA's anti-tying provisions. Specifically, UBS Bank argues that Plaintiffs have failed to show that the loan agreements are void as a matter of public policy.

Under Utah law, "the fact that a contract serves a prohibited purpose does not necessarily make the contract unenforceable." *Peterson v. Sunrider Corp.*, 48 P.3d 918, 930 (Utah 2002). Thus, if a court determines that a contract is illegal, "the court must then determine whether a statute or public policy demands that the contract be held unenforceable." *Id.* "For a contract to be void on the basis of public policy, 'there must be a showing free from doubt that the contract is against public policy.'" *Ockey v. Lehmer*, 189 P.3d 51, 57 (Utah 2008) (quoting *Frailey v. McGarry*, 211 P.2d 840, 847 (Utah 1949)).

In determining whether a contract is against public policy, Utah courts consider two factors: (1) whether "the legislature ha[s] specifically declared that [the] contracts . . . were 'prohibited and declared unlawful;'" and (2) whether "the contract harmed the public as a whole—not just an individual." *Id.*; *Howick v. Salt Lake City Corp.*, 310 P.3d 1220, 1228 (Utah Ct. App. 2013).

Here, the BHCA does not declare that loan agreements containing illegal tying provisions are void as against public policy. *See* 12 U.S.C. §§ 1971–78; *Exch. Nat'l Bank of Chi. v. Daniels*,

768 F.2d 140, 144 (7th Cir. 1985). And Plaintiffs do not point to any other statute that "specifically declare[s]" that contracts that violate the BHCA are void. *See Ockey*, 189 P.3d at 57. Thus, the first factor weighs in favor of enforcing the parties' loan agreements.

Moreover, Plaintiffs have not alleged any facts showing the parties' loan agreements "harmed the public as a whole." Although Plaintiffs allege facts showing UBS Bank's lending scheme had a broad impact, Plaintiffs have not alleged that *their* Credit Line Agreements with UBS Bank harmed the public. Rather, Plaintiffs only allege that their loan agreements with UBS Bank harmed them as individuals. Thus, the second factor also weighs in favor of enforcing the parties' loan agreements.

Plaintiffs have failed to make a "showing free from doubt that the contract is against public policy." *Id.* Plaintiffs' illegal contract claim must therefore be dismissed for failing to state a claim upon which relief can be granted.

### III. Plaintiffs' Conversion Claim

Plaintiffs bring a conversion claim, alleging that UBS Bank unlawfully took a security interest in Plaintiffs' accounts and in Plaintiffs' CEF shares, and that UBS Bank's foreclosure on the funds in Plaintiffs' accounts interfered with and deprived Plaintiffs of the use and possession of Plaintiffs' funds.

In its motion to dismiss, UBS Bank argues that Plaintiffs consented to UBS Bank's foreclosure and that such consent is a complete defense to Plaintiffs' conversion claim. Specifically, UBS Bank contends that Plaintiffs consented in the Credit Line Agreements to grant [UBS Bank] a security interest in their collateral accounts and the right to require the sale of securities in those accounts if Plaintiffs failed to meet the collateral requirements."

In Utah, "conversion is an act of wilful interference with a chattel, done without lawful

justification by which the person entitled thereto is deprived of its use and possession." *Bonnie & Hyde, Inc. v. Lynch*, 305 P.3d 196, 205 (Utah Ct. App. 2013) (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295–96 (Utah 1999)). Consent is a complete defense to the intentional tort of conversion: "[n]o intentional tort will lie where the plaintiff consents to otherwise tortious activity." *Lee v. Langley*, 121 P.3d 33, 38 n.3 (Utah Ct. App. 2005); *see also* Restatement (Second) of Torts § 252 (1965) ("One who would otherwise be liable to another for trespass to a chattel or for conversion is not liable to the extent that the other has effectively consented to the interference with his rights.").

Here, Plaintiffs consented to UBS Bank's foreclosure of the CEF shares in paragraph D of the Credit Line Agreement. In that provision, Plaintiffs agreed that "**UBS BANK USA MAY . . . SELL THE BORROWER'S SECURITIES**" if "**THE SECURITIES IN THE COLLATERAL ACCOUNT DECLINE BELOW THE REQUIRED COLLATERAL MAINTENANCE REQUIREMENTS**." Because Plaintiffs consented to UBS Bank's foreclosure of Plaintiffs' accounts in the Credit Line Agreements, Plaintiffs are precluded from stating a claim upon which relief can be granted for their conversion claim. Plaintiffs' conversion claim is therefore dismissed.[6]

## IV.  Plaintiffs' Breach of Fiduciary Duty Claim

Finally, Plaintiffs allege that UBS Bank breached its fiduciary to Plaintiffs. To establish a

---

[6] Plaintiffs contend they did not consent to UBS Bank's foreclosure on Plaintiff's account because "the entire tying arrangement, including the Credit Line Agreement, was void ab initio." An agreement that is "void ab initio" is "[n]ull from the beginning." *Void*, BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, "[a] contract is void ab initio if it seriously offends law or public policy." *Id.* But Plaintiffs failed to state an illegal contract claim showing that the parties' Credit Line Agreements are void for violating public policy. Thus, Plaintiffs' arguments that they could not have given consent in the Credit Line Agreements because those agreements are void ab initio fail for the same reason as Plaintiffs' illegal contract claim.

UBS Bank also argues that Plaintiffs' conversion claim should be dismissed for two additional reasons: (1) Plaintiffs' conversion claim is time barred; and (2) Plaintiffs failed to plead that UBS Bank acted unlawfully. Because consent is a complete defense to Plaintiffs' conversion claim, the court need not address UBS Bank's alternative arguments for dismissing Plaintiffs' conversion claim.

14

breach of fiduciary duty claim, "a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach." *Giles v. Mineral Res. Intern., Inc.*, 338 P.3d 825, 827 (Utah Ct. App. 2014) (citing *Christensen & Jensen, PC v. Barrett & Daines*, 194 P.3d 931, 938 (Utah 2008)). In its motion to dismiss, UBS Bank argues that Plaintiffs have failed to establish two of these elements: (A) UBS Bank does not owe Plaintiffs a fiduciary duty as Plaintiffs' creditor; and (B) Plaintiffs failed to plead any facts showing a breach of fiduciary duty. Each of these arguments is addressed below.

### A. Existence of a Fiduciary Duty

UBS Bank argues that Plaintiffs fail to plead the existence of a fiduciary duty. "Ordinarily, no fiduciary relationship exists between a bank and its customer." *State Bank of S. Utah v. Troy Hygro Sys., Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App. 1995). But there are exceptions to this general rule:

> [A] fiduciary relationship may arise if a customer 'place[s] particular confidence in' the bank, if the bank was 'in a position to have and exercise influence over' the customer, if the customer placed property in the bank's charge, if there was 'overmastering influence, dependence, or trust justifiably (and with mutual understanding) reposed' or 'weakness of age, mental strength, business experience, or intelligence' on the part of the customer.

*Velocity Press v. Key Bank, NA*, 570 F. App'x 783, 791 (10th Cir. 2014) (quoting *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990)).

Despite these exceptions, UBS Bank argues that the express terms of the Credit Line Agreements preclude Plaintiffs' fiduciary duty claim. Paragraph K of the agreements states, "UBS Bank USA and its affiliates will act as creditors and, accordingly, their interests may be inconsistent with, and potentially adverse to, the Borrower's interests." Thus, UBS Bank argues that "[d]ismissal is especially appropriate here because the parties' relationship is contractual and

15

the relevant contract does not provide for any fiduciary duty."

UBS Bank does not point to any case law showing that parties can contract out of a fiduciary duty that arises through the parties' conduct. Instead, UBS Bank cites *Hal Taylor Associates v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982) as "rejecting [the] imposition of [a] fiduciary duty where [the] 'language' of the parties' agreements did not 'create[] any extraordinary duty.'" But in that case, the Utah Supreme Court based its reasoning on the fact that "[t]he record reveals no basis for implying a relationship of special reliance and trust" because the parties' entire relationship was based on contract. *Id.*

Here, Plaintiffs assert that "a relationship of special reliance and trust" exists outside of the parties' Credit Line Agreements. Specifically, Plaintiffs argue that UBS Bank's arguments regarding paragraph K "ignores that [UBS] Bank, through its agent [UBS Puerto Rico], acted not only as lender but also as financial advisor," and that a fiduciary relationship arose through this dual relationship despite paragraph K. Plaintiffs also argue that Mr. Ramirez, as UBS Bank's agent, acted with apparent authority and "had a duty to protect Plaintiffs from making bad financial decisions." Plaintiffs further argue that UBS Bank ratified Mr. Ramirez's actions when it issued the loans to Plaintiffs. Conversely, UBS Bank argues that Plaintiffs may not base their fiduciary duty claim on Mr. Ramirez's conduct because "to the extent UBS Puerto Rico [and Mr. Ramirez] acted in the capacity of 'investment advisor,' [they] did so outside the scope of any agency relationship [they] may have allegedly had with [UBS Bank]."

Apparent authority is "the power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Burdick v. Horner Townsend & Kent, Inc.*, 345 P.3d 531, 539 (Utah 2015) (quoting Restatement (Third)

16

of Agency § 2.03 (2006)). Thus,

> where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform, on behalf of his principal, a particular act, such particular act having been performed, the principal is estopped as against such innocent third person, from denying the agent's authority to perform it.

*Id.* (quoting *Grazer v. Jones*, 289 P.3d 437, 440 (Utah 2012)).

An agent has apparent authority when: (1) "the principal has manifested his [or her] consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority;" (2) "the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority;" and (3) "the third person, relying on such appearance of authority, has changed his [or her] position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal." *Id.* (quoting *Luddington v. Bodenvest Ltd.*, 855 P.2d 204, 209 (Utah 1993)).

Here, Plaintiffs have alleged sufficient facts to support a conclusion that Mr. Ramirez had apparent authority to act on behalf of UBS Bank. Plaintiffs allege that Mr. Ramirez, a financial advisor for UBS Puerto Rico—which is an affiliate of UBS Bank—represented to Plaintiffs that UBS Bank had authorized the loan program. Plaintiffs further allege that Mr. Ramirez represented to them that the loans were conditioned on Plaintiffs using the loan proceeds to purchase CEF shares. In addition, Plaintiffs allege that Mr. Ramirez obtained approval for the loans, prepared all loan documentation, arranged for the disbursement of loan proceeds, and served as a liaison between Plaintiffs and UBS Bank on all matters pertaining to the loans. Thus, Plaintiffs have alleged sufficient facts showing that Mr. Ramirez was UBS Bank's agent and had apparent authority to act on UBS Bank's behalf.

But even if Plaintiffs failed to allege sufficient facts showing Mr. Ramirez had apparent

17

authority to act for UBS Bank, Plaintiffs have alleged sufficient facts showing UBS Bank ratified Mr. Ramirez's conduct. "A principal may impliedly or expressly ratify an agreement made by an unauthorized agent." *Dillon v. S. Mgmt. Corp. Ret. Trust*, 326 P.3d 656, 665 (Utah 2014) (quoting *Bradshaw v. McBride*, 649 P.2d 74, 78 (Utah 1982)). "For ratification to occur, the principal must have knowledge of all 'material facts and circumstances relative to the unauthorized act or transaction.'" *Id.* (quoting *Bradshaw*, 649 P.2d at 78). "'A principal may impliedly or expressly ratify an agreement made by an unauthorized agent.'" *Id.* (quoting *Bradshaw*, 649 P.2d at 78). "Any conduct which indicates assent by the purported principal to become a party to the transaction . . . is sufficient." *Id.* (quoting *Moses v. Archie McFarland & Son*, 230 P.2d 571, 573–74 (Utah 1951)).

Here, Plaintiffs have alleged sufficient facts showing UBS Bank ratified Mr. Ramirez's actions when he advised Plaintiffs to use the loan proceeds to purchase CEF shares. Plaintiffs allege that UBS Bank issued the loans to Plaintiffs and then took a security interest in Plaintiffs' accounts, which consisted almost entirely of the CEF shares—the byproduct of the alleged illegal tying arrangement. Such actions indicate that UBS Bank knew about and assented to Mr. Ramirez's conduct. Thus, even if Plaintiffs failed to properly allege that Mr. Ramirez had apparent authority to act on UBS Bank's behalf, Plaintiffs have nonetheless properly alleged an alternative ground showing that UBS Bank is bound by Mr. Ramirez's conduct.

Therefore, under either a theory of apparent authority or ratification, Plaintiffs have alleged sufficient facts showing that a fiduciary relationship exists between them and Mr. Ramirez, UBS Bank's alleged agent. Based on the facts alleged by Plaintiffs, it was reasonable for Plaintiffs to believe that Mr. Ramirez, as Plaintiffs' financial advisor, was acting in Plaintiffs' best interests. As a financial advisor, "[i]t was his job to protect, within his power, [Plaintiffs]

from making bad financial choices and investments." *UBS Bank USA v. Ibby, LLC*, No. 2:09-cv-372-TS, 2009 WL 4884383, at *8 (D. Utah Dec. 10, 2009). Such allegations are sufficient to allege the existence of a fiduciary relationship at this stage of the proceedings.

### B. Breach of Fiduciary Duty

UBS Bank argues that Plaintiffs have failed to allege sufficient facts showing UBS Bank breached its fiduciary duty to Plaintiffs. Plaintiffs base their breach of fiduciary claim on three allegations: (1) UBS Bank engaged in an illegal loan program; (2) UBS Bank could not take a security interest in the CEF shares because it was not a resident of Puerto Rico; and (3) UBS Bank represented to Plaintiffs that the CEFs were "safe and secure."

As discussed above, Plaintiffs have alleged sufficient facts showing that UBS Bank, through its alleged agent, Mr. Ramirez, had a duty "to protect, within [its] power, [Plaintiffs] from making bad financial choices and investments." *Id.* And Plaintiffs have also alleged sufficient facts showing that UBS Bank, through its alleged agent, breached this duty to Plaintiffs by encouraging Plaintiffs to engage in an illegal loan program. In addition, Plaintiffs have alleged sufficient facts showing UBS Bank misrepresented the "safe and secure" nature of the CEFs, thereby encouraging Plaintiffs to make "bad financial choices and investments." *Id.*

For example, although the prospectus to the CEFs states, "**An investment in the Funds involves risks, including the risk of loss of some or all amounts involved**," Plaintiffs have alleged that UBS Bank, through Mr. Ramirez, represented that the CEFs were more safe and secure than they actually were. Plaintiffs allege that UBS Bank's "authorized agents were adamant, and stated repeatedly, in communications with plaintiffs, that the investments were extremely safe." Plaintiffs further allege that UBS Bank had "information regarding risks associated with the Funds that caused [UBS] Bank's authorized affiliate agent in Puerto Rico to

19

decide to sell its own holdings." In addition, Plaintiffs allege that UBS Bank dismissed other "brokers' numerous concerns regarding the risks posed by investing in" CEF shares, and that UBS conducted "internal investigations" in response to news reports stating that clients were "piled into highly leveraged bond funds run by UBS and were encouraged by its brokers to borrow even more money to invest in those funds." Plaintiffs also allege that UBS Bank "made a determination that the Funds serving as collateral for the mentioned loans to customers had become more risky over time." These and other allegations are sufficient at the pleading stage to state a claim that UBS Bank misrepresented the "safe and secure" nature of the CEFs to Plaintiffs, thereby breaching their fiduciary duty to Plaintiffs by encouraging them to make ill-advised investments.

Accepting these facts as true and "view[ing] them in the light most favorable to" Plaintiffs, *Jordan-Arapahoe*, 633 F.3d at 1025, the court holds that Plaintiffs have alleged sufficient factual matter to support a breach of fiduciary duty claim.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendant UBS Bank's Motion to Dismiss (Docket 63). Plaintiffs' first and fourth causes of action—violation of the BHCA and breach of fiduciary duty—survive Defendant's motion to dismiss, while Plaintiffs' second and third causes of action—illegal contract and conversion—are dismissed for failure to state a claim.

DATED this 8th day of July, 2016.

BY THE COURT:

_____
Judge Jill N. Parrish
United States District Court